[Cite as *State v. Stevens*, 2017-Ohio-498.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


STATE OF OHIO,                                    :

    Plaintiff-Appellee,                       :          CASE NO. CA2015-09-020

                                                     :          O P I N I O N
- vs -                                                            2/13/2017

                                                     :

HARLAN L. STEVENS,                         :

    Defendant-Appellant.                  :


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20150015


Jess C. Weade, Fayette County Prosecuting Attorney, Sean M. Abbott, Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Robert A. Brenner, 120 West Second Street, Suite 706, Dayton, Ohio 45402, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Harlan L. Stevens, appeals his conviction in the Fayette County Court of Common Pleas.  For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2}  On January 9, 2015, the Fayette County Grand Jury returned a three-count indictment charging Stevens with the following felonies: breaking and entering, theft, and

safecracking. Stevens entered pleas of not guilty to these charges and the case proceeded to a jury trial on August 26, 2015, which concluded with a guilty verdict on all three charges. The trial court held a sentencing hearing on August 28, 2015, where it merged the breaking and entering and theft convictions as allied offenses of similar import. After the state elected to proceed on the breaking and entering charge, the trial court imposed consecutive 12 and 18-month sentences for the breaking and entering and safecracking convictions, respectively. The trial court further sentenced Stevens to consecutively serve the time remaining on his postrelease control ("PRC") because he was on PRC at the time of committing the current offenses.

{¶ 3} Stevens timely filed a notice of appeal on September 14, 2015. However, after several extensions, Stevens failed to timely file a brief pursuant to the scheduling order. As a result, we dismissed his appeal. Stevens subsequently filed an application to reopen his case pursuant to App.R. 26(B) claiming ineffective assistance of appellate counsel due to this failure. On September 9, 2016, we granted Stevens' application and reopened his case and permitted him to raise three assignments of error and any other non-frivolous issues discovered by his new appellate counsel.[1]

{¶ 4} The relevant evidence at trial established that a Wendy's restaurant located in Jeffersonville at the intersection of State Route 41 and Interstate 71 was broken into between 10:00 P.M. on Sunday, September 21, 2014 and 5:00 A.M. on Monday, September 22, 2014. Stevens gained entry by breaking the drive-thru window with a large landscaping rock. Once inside the restaurant, he cut a hole on the side of the office safe with a grinder and removed approximately $1,900. The general manager of the restaurant, Misty Wine, discovered the

---

1. We note each of Stevens' six assignments or error is in accordance with App.R. 26(B)(7), which states "[t]he parties shall address in their briefs the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency."

broken window and safe when opening the restaurant on Monday morning. Wine called the police and an investigation into the events from the prior night was initiated by the Fayette County Sheriff's Office.

{¶ 5} During the investigation, the sheriff's office found a bloody bandage atop debris surrounding the safe and two flashlights on the office floor. The sheriff's office then submitted the bandage to the Ohio Bureau of Criminal Identification and Investigation ("BCI&I") for DNA testing. The DNA testing revealed that the blood on the bandage contained Stevens' DNA. Subsequently, the sheriff's office discovered Stevens had been questioned by Detective Michael Aiken of the Miamisburg Police Department in relation to a breaking and entering that occurred at a Miamisburg Arby's restaurant. The Arby's case similarly involved a breaking and entering through the drive-thru window. In the course of the investigation of the Miamisburg case, Detective Aiken obtained a buccal swab from Stevens. Stevens admitted to breaking into the Arby's restaurant with an accomplice and Miamisburg P.D. recovered a bag of tools from Stevens' car parked near the Arby's restaurant that included a grinder he intended to use to gain access to the contents of the store safe.

{¶ 6} The Fayette County Sheriff's Office requested Detective Aiken submit Stevens' buccal swab to BCI&I for testing and comparison to the DNA obtained from the bandage found at the Wendy's restaurant in Jeffersonville. The testing concluded that the DNA from the buccal swab matched the DNA from the bandage. At trial, the state presented evidence of Stevens' involvement in the Miamisburg Arby's breaking and entering pursuant to Evid.R. 404(B). The trial court provided two limiting instructions as to the purpose for which the jury may consider this evidence. The first instruction came before the presentation of the evidence during the state's case-in-chief and the second was included in the final jury instructions. Based on the evidence presented, the jury convicted Stevens on all counts.

{¶ 7} Assignment of Error No. 1:

- 3 -

{¶ 8} THE TRIAL COURT ERRED IN FAILING TO MERGE STEVENS' CONVICTIONS FOR BREAKING AND ENTERING AND SAFECRACKING WHEN THOSE OFFENSES HAD THE SAME IMPORT, AROSE FROM THE SAME CONDUCT, AND CAUSED THE SAME HARM.

{¶ 9} Stevens first argues that the trial court erred by not merging his breaking and entering and safecracking convictions because they are allied offenses of similar import. Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review de novo. *Accord State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 26-28. Pursuant to R.C. 2941.25, a trial court shall not impose multiple punishments for the same criminal conduct. The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

"In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors – the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at ¶ 13.

{¶ 10} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. Therefore, the

analysis "may result in varying results for the same set of offenses in different cases." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 52, *abrogated in part by Ruff* at ¶ 30-33. In making this determination pursuant to R.C. 2941.25, a court must review the entire record. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 24. The burden lies with the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Lewis*, 12th Dist. Clermont No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 11} Stevens argues the trial court should have merged his convictions for breaking and entering and safecracking because they are the result of the same conduct, arise from the same animus, and caused the same harm. In support of his claim, Stevens asserts this court has previously held that breaking and entering could merge with safecracking when the animus of both crimes was the same. However, the authority cited does not directly support this proposition and predates the proper inquiry, as discussed above, under *Ruff*. *See State v. Richardson*, 12th Dist. Clermont No. CA2012-06-043, 2013-Ohio-1953, ¶ 26 (finding under *Johnson* analysis that grand theft and safecracking should have been merged where the defendant committed the offenses with the same conduct and with the same animus); *but see id.* (illustrating this court has found grand theft and safecracking do not merge where the defendant completed the offenses with separate conduct and a separate animus), citing *State v. Crosby*, 12th Dist. Nos. CA2010-10-081 and CA2011-02-013, 2011-Ohio-4907, ¶ 21. As demonstrated by *Richardson* and *Crosby*, the results of the allied offenses analysis will vary on a case-by-case basis dependent on the facts of a given case. *Richardson* at ¶ 26.

{¶ 12} Here, the trial court properly found that merger was not appropriate regarding Stevens' convictions for breaking and entering and safecracking because they were of dissimilar import and were committed separately. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the

harm that results from each offense is separate and identifiable." *Ruff* at ¶ 26. Pursuant to R.C. 2911.13(A), one is guilty of breaking and entering if he or she "by force, stealth, or deception, * * * trespass[es] in an unoccupied structure, with the purpose to commit therein any theft offense * * *." As to the safecracking under R.C. 2911.31, provides that no person shall "knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox" with the purpose to commit an offense.

{¶ 13} In this case, the conduct and harm of damaging the drive-thru window was separate from the conduct and harm of cutting a hole in the side of the safe. The breaking and entering was complete after Stevens broke the drive-thru window and stepped inside the restaurant with the intent to commit a theft offense. Sometime later, Stevens cut a hole in the office safe and removed the cash. Thus, the initial offense of breaking and entering was complete before the separate conduct supporting the safecracking offense was undertaken. *See, e.g.*, *State v. Back*, 12th Dist. Butler Nos. CA2015-03-037 and CA2015-03-038, 2015-Ohio-4447, ¶ 12 (holding offenses were not allied offenses of similar import where individual conduct supported the initial offense and separate conduct after completion of the initial offense supported the second offense); *see also State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 16 ("Because one offense was completed before the other offense occurred, two offenses were committed separately for purposes of R.C. 2941.25(B) notwithstanding their proximity in time and that one was committed in order to commit the other"). Therefore, the convictions are not allied offenses of similar import and Stevens' first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} HARLAN STEVENS' CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 16}  Assignment of Error No. 3:

{¶ 17}  STEVENS' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 18}  "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 102 (1997).  Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.  *Id.*, citing *Black's Law Dictionary* (6th Ed.1990) 1433.  A conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979).  The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259-60 (1991), *superseded by constitutional amendment on other grounds as stated by Smith* at 102.  In evaluating the sufficiency of the evidence, this court "defer[s] to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.  "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *State v. Robinson*, 162 Ohio St. 486, 487 (1955), *superseded by constitutional amendment on other grounds as stated by Smith* at 102.

{¶ 19}  On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side

- 7 -

of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 20} "A reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict." (Emphasis added.) *Tibbs* at 42-43; *see also State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19 (stating that finding a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency). Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 21} Stevens argues the evidence supporting his convictions was insufficient to establish that he actually entered the Wendy's restaurant or committed any of the crimes therein, and that the amount of cash stolen was $1,000 or more. Further, Stevens argues that his convictions were against the manifest weight of the evidence for the same reasons. To support these arguments, Stevens claims the only evidence presented by the state that he entered the restaurant was a bandage containing Stevens' DNA, which does not give rise to the inferences required by the jury to convict. Further, Wine's testimony that roughly

$1,900 was stolen from the safe was insufficient because Wine did not close the Wendy's restaurant the night before the offenses occurred; therefore, she could not have known the amount in the safe at the time.

{¶ 22} After a thorough review of the record, we find the state presented sufficient evidence that would allow the jury to conclude beyond a reasonable doubt that Stevens committed the offenses of breaking and entering, theft, and safecracking. Here, it cannot be said that the jury clearly lost its way and created such a manifest miscarriage of justice requiring a reversal of Stevens' convictions. The bloody bandage containing Stevens' DNA found atop the safe debris in the office makes it highly probable that Stevens was inside the store. Further, the evidence of his prior breaking and entering of another fast food restaurant by breaking the drive-thru window to gain entry and having similar safe-cutting tools in his car provided enough circumstantial evidence for the jury to reasonably conclude that Stevens committed the offenses at the Wendy's restaurant. Finally, we find the state also presented sufficient evidence that the amount stolen from the Wendy's restaurant was $1,000 or more. Although Wine did not close the Wendy's restaurant the night before, she qualified her testimony regarding the amount stolen by stating that her calculation of approximately $1,900 was based upon a review of deposits and receipts from the night in question.

{¶ 23} Therefore, Stevens' convictions for breaking and entering, theft, and safecracking were supported by sufficient evidence and not against the weight of the evidence. Accordingly, his second and third assignments of error are overruled.

{¶ 24} Assignment of Error No. 4:

{¶ 25} THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO USE 404(B) EVIDENCE AT TRIAL, AND THIS ERROR DEPRIVED STEVENS OF HIS RIGHT TO A FAIR TRIAL PURSUANT TO THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 26} "A trial court has broad discretion in the admission and the exclusion of

evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109 (1989). An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 27} "'Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'" *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. However, the Ohio Supreme Court has promulgated certain exceptions to the common law regarding the admission of other acts evidence. Those exceptions are contained in Evid.R. 404(B), which states:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Furthermore, in order for evidence to be admissible pursuant to Evid.R. 404(B), there must be substantial proof the alleged other acts were committed by the defendant and the evidence must tend to prove one of the enumerated exceptions. *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994); *see also State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 37. "Substantial proof" is not proof "beyond a reasonable doubt." *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 14. Additionally,

R.C. 2945.59 provides that

> [i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 28} The Ohio Supreme Court in *Williams* outlined a three-part test for courts to apply when considering the admissibility of other acts evidence. *Williams* at ¶ 19-20. First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should determine if "evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶ 29} In this case, the other acts evidence involved the breaking and entering of an Arby's restaurant in Miamisburg through the drive-thru window. Detective Aiken of the Miamisburg Police Department testified that Stevens admitted to breaking into the Arby's restaurant during questioning. Additionally, a bag of tools was recovered from Stevens' vehicle at the scene which included a grinder. Further, there was testimony that a similar grinder was likely used to carry out the Wendy's safecracking. The trial court allowed the presentation of this evidence to the jury for the limited purposes of showing identity and modus operandi. The trial court provided the jury with a limiting instruction before the

- 11 -

presentation of the evidence and during final jury instructions. Nonetheless, Stevens argues "the real reason" for permitting the jury to hear the evidence "was to improperly 'prove the character of a person in order to show action in conformity therewith.'" Stevens argues the record supports his claim because the state did not need help proving identity because of the aforementioned DNA evidence.

{¶ 30} After a thorough review of the record, we find there is substantial proof that the alleged other acts were committed by Stevens based upon the testimony of Detective Aiken. For the reasons that follow, we further find the trial court properly permitted the presentation of the other acts evidence to show identity and modus operandi under the three-part test in *Williams*.

{¶ 31} First, the evidence of Stevens' prior breaking and entering of the Arby's restaurant by breaking through the drive-thru window while in possession of similar safe-cutting tools in his car provided circumstantial evidence for the jury to reasonably conclude that Stevens committed the offenses by undertaking a specific and unique method of action. Next, contrary to Stevens' claim otherwise, this evidence was not admitted to demonstrate Stevens' character in order to show that he acted in conformity therewith. Rather, as the two limiting instructions clearly establish, the trial court admitted the evidence for the purposes of identity and modus operandi. Specifically, the trial court admonished the jury that such evidence can only be considered for such purposes, and "cannot be used by [the jury] and it's not being offered by the State to prove character. In other words[,] that someone is a bad person and because they are a bad person they must have done this crime. So you absolutely cannot consider it for that purpose."

{¶ 32} Finally, the evidence is probative of the fact that Stevens employed the same technique and tools to break into another fast food restaurant, which substantially outweighs any danger of unfair prejudice. This is particularly true where the trial court provided two

specific limiting instructions to the jury describing the exact purposes for which the jury may consider the evidence. *Accord State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 37 (finding the trial court minimalized any potential prejudice by providing a limiting instruction before testimony and again before submitting the case to the jury); *see also State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194 (stating juries are presumed to follow the instructions given to them by the trial court). Moreover, the record does not reflect any indication that the jury did not follow the trial court's instructions.

{¶ 33} Therefore, the trial court did not err by admitting other acts evidence pursuant to Evid.R. 404(B). Accordingly, Stevens' fourth assignment of error is overruled.

{¶ 34} Assignment of Error No. 5:

{¶ 35} THE TRIAL COURT ERRED BY AGREEING TO GIVE A COMPLICITY INSTRUCTION AFTER THE DEFENSE CLOSING ARGUMENT AND OVER THE OBJECTION OF THE DEFENSE AND THIS ERROR DEPRIVED STEVENS OF HIS RIGHT TO A FAIR TRIAL PURSUANT TO THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 36} Stevens argues that the trial court improperly gave the jury a complicity instruction because the state did not present any evidence that more than one person committed the crimes with which Stevens was charged.

{¶ 37} The complicity statute, R.C. 2923.03, states, in pertinent part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

\* \* \*

(F) Whoever violates this section is guilty of complicity in the

- 13 -

commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

A jury instruction on complicity is proper if the evidence presented at trial could reasonably be found to support a defendant's guilt pursuant to R.C. 2923.03. *State v. Benson*, 12th Dist. Butler No. CA2004-10-254, 2005-Ohio-6549, ¶ 29. "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 35, citing *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997). We review a trial court's determination whether sufficient facts exist to support a jury instruction for an abuse of discretion. *State v. Evegan*, 12th Dist. Warren No. CA97-08-091, 1999 WL 559694, *2 (Aug. 2, 1999).

{¶ 38} In this case, there was sufficient evidence presented at trial to warrant a jury instruction on complicity. Lieutenant Ryan McFarland of the Fayette County Sheriff's Office testified that there might have been two suspects. Lieutenant McFarland stated two flashlights were found near the safe in the office. Further, that despite the recovery of only Stevens' DNA from the scene, it does not preclude the possibility that other persons may have been involved. Furthermore, as discussed above, the other acts evidence regarding the earlier Arby's restaurant demonstrates that Stevens' modus operandi for carrying out these offenses may include an accomplice. While this evidence supporting the jury instruction is not overwhelming, facts do exist to support a complicity instruction. Therefore, the trial court did not abuse its discretion in charging the jury with complicity.

{¶ 39} Accordingly, Stevens' fifth assignment of error is overruled.

{¶ 40} Assignment of Error No. 6:

- 14 -

{¶ 41} THE TRIAL COURT ERRED IN ADMITTING THE DNA COMPARISON, BECAUSE NO TESTIMONY OR RECORDS ESTABLISHED WHETHER DNA WAS COLLECTED PROPERLY.

{¶ 42} Stevens contends that the DNA evidence in this case was not authenticated due to the state's failure to establish a proper chain of custody for the buccal swab; thereby, providing an insufficient foundation to admit the BCI&I comparison lab report ("BCI&I report") into evidence. Specifically, Stevens argues that Detective Aiken's testimony is insufficient to establish the chain of custody because he stated, "I, I believe I did yes[,]" in response to a question if he personally took the buccal swab. Stevens further contends that Detective Aiken "did not explain how the sample was taken, what protocols the officers follow when taking such samples, and what measures ensured that the sample was not contaminated or even confused for a different sample."

{¶ 43} Evid.R. 901 provides "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The 'chain of custody' is part of the authentication and identification mandate set forth in Evid.R. 901 for the admission of evidence." *In re Swader*, 12th Dist. Warren No. CA2000-04-036, 2001 WL 121084, *7 (Feb. 5, 2001), quoting *State v. Brown*, 107 Ohio App.3d 194, 200 (3d Dist.1995). The state bears the burden of establishing a proper chain of custody. *In re Swader* at *7. However, this duty is not absolute and the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur. *Id.* The chain of custody affects the credibility of the evidence, not its admissibility. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 57.

{¶ 44} In this case, Stevens did not object to any testimony regarding the DNA evidence at the time it was offered. Stevens' failure to object to the testimony constitutes a waiver of any error in its admission and may only be reviewed for plain error. Generally, the

decision to admit or exclude relevant evidence lies within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. If an evidentiary issue is not objected to during trial, we review it for plain error only. *State v. Rivera-Carillo*, 12th Dist. Butler No. CA2001-03-054, 2002 WL 371950, *16 (Mar. 11, 2002). Plain error does not exist unless, but for some "obvious" error committed by the trial court, the outcome of the trial would have been different. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 31. Notice of plain error "'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Haney*, 12th Dist. Clermont No. CA2005-07-068, 2006-Ohio-3899, ¶ 50, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 45} With respect to the oral testimony during trial regarding the DNA evidence, a review of the record reveals such evidence was properly admitted by the trial court because the state sufficiently established to a reasonable certainty that no substitution, alteration, or tampering occurred. Detective Aiken testified he took Stevens' buccal swab at the conclusion of Stevens' questioning regarding the Arby's break-in. Detective Aiken further explained that a buccal swab is performed by taking a "Q-Tip" about four to six inches long and swabbing the inside of a person's cheek, which is then placed into a small cardboard box. At the request of the Fayette County Sheriff's Office, the buccal swab was then sent to BCI&I for a DNA comparison. Timothy Augsback, a forensic scientist for BCI&I, further testified to the extensive procedures regularly undertaken to conduct a DNA comparison. Augsback testified that he conducted these procedures with respect to the DNA obtained from Stevens' buccal swab and the bandage recovered from the Wendy's restaurant, which resulted in a DNA match. Therefore, the trial court did not commit plain error by permitting the oral testimony regarding the DNA evidence.

{¶ 46} The results of the DNA comparison are contained in the BCI&I report, which

was admitted at the end of the state's case-in-chief over Stevens' objection. Stevens argued the BCI&I report was irrelevant and that there was insufficient foundation laid for its admission because there was no testimony as to who specifically took the buccal swab. We review the trial court's decision to admit this evidence for an abuse of discretion. *State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 11.

**{¶ 47}** Here, the trial court did not abuse its discretion by admitting the BCI&I report. Contrary to Stevens' assertion otherwise, Detective Aiken testified that he took Stevens' buccal swab, which was later sent to BCI&I for DNA testing. As noted above, Detective Aiken further testified regarding the proper procedures for taking a buccal swab. Additionally, Augsback testified as to the procedures he performs as a forensic scientist when performing DNA comparisons and that he has performed "hundreds or thousands" of them. Augsback testified that he undertook these procedures with respect to the bandage and the buccal swab comparison, which resulted in a DNA match. This result was reduced to writing in the BCI&I report. Thus, the BCI&I report is relevant because it makes it highly probable that it is Stevens' DNA on the bandage, which was located inside the Wendy's restaurant. Moreover, as analyzed above, the state sufficiently established to a reasonable certainty that the DNA evidence was free of substitution, alteration, or tampering. This established chain of custody for the DNA evidence described in the report coupled with Augsback's testimony authenticated the report provided a sufficient foundation for the report's admission. Accordingly, the trial court did not abuse its discretion.

**{¶ 48}** Nonetheless, even if we were to accept Stevens' argument that the BCI&I report was improperly admitted into evidence, any alleged error would be harmless. An accused has "a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error." *State v. Swartsell*, 12th Dist. Butler No. CA2002-06-151, 2003-Ohio-4450, ¶ 31. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does

not affect [the accused's] substantial rights shall be disregarded" as harmless error. *See also State v. MaCausland*, 12th Dist. Butler No. CA2007-10-254, 2008-Ohio-5660, ¶ 25. A finding of harmless error is appropriate where the admission of the evidence was merely cumulative to evidence already presented at trial because it does not result in any prejudice. *See State v. Tucker*, 12th Dist. Butler No. CA2010-10-263, 2012-Ohio-139, ¶ 17-19.

**{¶ 49}** In this case, any error in the BCI&I report's admission would have been harmless error because the information contained within the report was simply cumulative of the evidence presented through oral testimony. The BCI&I report detailed the procedures undertaken by Augsback to conduct the DNA comparison and the results therefrom. During the state's case-in-chief, Augsback provided direct testimony of this information in its entirety without objection. Therefore, due to the cumulative nature of the BCI&I report, we find Stevens cannot demonstrate any resulting prejudice from its admission

**{¶ 50}** Accordingly, Stevens' sixth assignment of error is overruled.

**{¶ 51}** Finally, Stevens contends that his original appellate counsel was deficient by failing to timely file a brief, which resulted in prejudice because his appeal was dismissed. We previously found Stevens' original appellate counsel's failure to file a brief raised a genuine issue of ineffective assistance of appellate counsel pursuant to App.R. 26(B). Therefore, we granted Stevens' application to reopen his case on three assignments of error and any other nonfrivolous issues discovered by his new appellate counsel. As a result, Stevens was afforded a full opportunity to argue his appeal. In so doing, Stevens raised six assignments of error, which we analyzed above and overruled. Therefore, Stevens has not been prejudiced by his original appellate counsel's performance.

**{¶ 52}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.